UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARY CARROLL,

                Plaintiff,

v.                                      **DECISION AND ORDER**
                                                13-CV-456S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1.     Plaintiff, Mary Carroll, challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act").

2.     Alleging disability beginning October 1, 2008, Carroll applied for Social Security benefits on September 13, 2010. The Commissioner of Social Security ("Commissioner") denied that application, and as result, she requested an administrative hearing. She received that hearing before ALJ Bruce Mazzarella on February 23, 2012. The ALJ considered the case *de novo*, and on March 12, 2012, issued a decision denying Carroll's application. Carroll filed a request for review with the Appeals Council, but the Council denied that request, prompting her to file the current civil action on May 2, 2013, challenging Defendant's final decision.[1]

3.     On February 4, 2014, the Commissioner filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Carroll followed suit two days later. For the following reasons, the Commissioner's motion is denied and

---

[1] The ALJ's March 12, 2012 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

Carroll's is granted.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.	The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.	This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.  The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

8.	In this case, the ALJ made the following findings: (1) Carroll has not engaged

in substantial gainful activity since her alleged onset date (R. 24);[2] (2) Carroll suffers from three severe impairments, namely "chronic back pain with degenerative changes," "chronic neck pain with evidence of degenerative changes," and obesity.(id.); (3) she does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (id.); (4) She retains the residual functional capacity ("RFC") to perform light work as defined in the regulations (R. 25); and (5) there are jobs that exist in significant numbers in the national economy that she can perform. (R. 27.) Ultimately, the ALJ concluded that Carroll was not under a disability, as defined by the Act, from his onset date through the date of the decision (R. 28.)

9.   Although this Court is not prepared to find that the evidence necessarily supports a finding that Carroll is disabled, this Court finds that remand for further review is necessary.

10.   Carroll's chief complaint is lower back pain. This, she argues, keeps her from working. The ALJ correctly noted that the only opinion on record indicating that Carroll was disabled due to issues with her back (or due to any cause) comes from her chiropractor, Dr. Palmer, who is not an acceptable medical source. See 20 C.F.R. § 404.1527(a)(2).

11.   Carroll saw Dr. Palmer roughly once a week for five years. Although a chiropractor does not qualify as an "acceptable medical source" and therefore cannot establish a medical impairment, opinions from these so-called "other sources" are entitled to some weight, especially when, as in this case, there is a treatment relationship with the Plaintiff. See 20 C.F.R. § 416.913(d)(1); Mortise v. Astrue, 713 F. Supp. 2d 111, 126

---

[2]Citations to the underlying administrative record are designated "R."

(N.D.N.Y. 2010); Pogozelski v. Barnhart, No. 03–CV–2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant").

12. "Sources not technically deemed 'acceptable medical sources,' such as chiropractors, are important in the medical evaluation because they 'have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.'" Phelps v. Colvin, 12-CV-976S, 2014 WL 122189, at * 3 (W.D.N.Y. Jan. 13, 2014) (quoting SSR No. 06–03p). Opinions from other sources "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Id.

13. When evaluating evidence from these medical sources, the ALJ should consider: (i) how long the source has known and how frequently the source has seen the individual; (ii) how consistent the opinion is with other evidence; (iii) the degree to which the source presents relevant evidence to support an opinion; (iv) how well the source explains the opinion; (v) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (vi) any other factors that tend to support or refute the opinion. See SSR 06–03; Solsbee v. Astrue, 737 F. Supp. 2d 102, 114 (W.D.N.Y. 2010).

14. In his first report, from October of 2010, Dr. Palmer found that Carroll could "rarely" carry 10 pounds. He also found that she would have to take one day off every month due to her disability, and that she could sit for only 2 hours in an eight-hour workday (while standing for less than two). In a later report, dated November 22, 2011, he found that she could never carry 10 pounds and that she would need to take four days off every month. He again found the same limitations with regard to sitting and standing.

15. But the ALJ, citing only one of the six factors spelled out in SSR 06-03p, found that this opinion conflicted with other medical evidence, and since Dr. Palmer is not an acceptable medical source, he did not give it "significant weight." (R. 26.)

16. Instead, the ALJ assigned greater weight and relied primarily on the opinion of Dr. Balderman, a consultive examiner, who found that Carroll had full range of motion in the neck "and [the] ability to flex the back to 70 degrees." (R. 26–27.) He also found that Carroll had moderate limitations in her ability to sit and stand for prolonged periods.

17. But Dr. Balderman's report is not the clean bill of health that the ALJ suggests it is. Indeed, even Dr. Balderman, whose opinion received greater weight, found that Carroll suffered from moderate limitations in prolonged sitting and standing. This is not necessarily compatible with an ability to perform light work, as defined by the regulations. That type of work involves:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

18. Thus, light work, the type of work Carroll was found capable of, requires "a good deal of walking or standing" or "sitting most of the time." Yet the two opinions specifically noted by the ALJ while formulating his RFC analysis – Dr. Palmer's and Dr. Balderman's – both suggest that Carroll would have trouble with such prolonged activity. In this sense, Dr. Palmer's opinion cannot be accorded less weight on the ground that it

is inconsistent with other evidence. It is, in fact, somewhat consistent.

19. But this is not to say that any moderate limitation in sitting or standing necessarily renders a claimant disabled. As the Commissioner points out, several courts have upheld an ALJ's decision that the claimant could perform light or sedentary work even when there is evidence that the claimant had moderate difficulties in prolonged sitting or standing. See Hammond v. Colvin, No. 12-cv-965, 2013 WL 4542701 at *6 (N.D.N.Y. Aug. 26, 2013); Stacey v. Comm'r of Social Sec., No. 09-cv-0638, 2011 WL 2357665 at *6 (N.D.N.Y. May 20, 2011). But it does mean that ALJ Mazzarella is required, in accordance with SSR 06-03p, to discuss and provide reasons tending to support the finding that, despite the moderate limitations (and in this case, despite Dr. Palmer's opinion that limitations are more than moderate, and despite the degenerative changes in Carroll's back) Carroll could still perform light work. See Malone v. Comm'r of Soc. Sec., No. 08-CV-1249 GLS/VEB, 2011 WL 817448m, at *10 (N.D.N.Y. Jan. 18, 2011) ("At a minimum, an assessment of moderate limitation suggests a possibility that prolonged standing might pose a problem."). But no such discussion of medical opinion evidence is present here. Instead, the ALJ relies on Dr. Balderman's report and rejects Dr. Palmer's report with no further elaboration; and the RFC includes no accommodations for breaks or changing positions.

20. Although Dr. Yu, a non-examining state-agency physician, found that Carroll was not disabled, this opinion is mentioned only in passing earlier in the ALJ's decision, and the ALJ makes no further reference to it. And although the Commissioner argues that "the ALJ relied on the nearly normal findings noted by Plaintiff's treating physician, Dr. Jupudy, in nearly ever single examination," (Def.'s Reply Br. at 4), this characterization of

the decision is a clear overstatement. The ALJ refers to Dr. Jupudy only once, in passing (and not by name), writing, "[T]he claimant follows with her medical doctor and has been counseled extensively as to the need for weight reduction as a means to reduce the risk of hypertension, diabetes and musculoskeletal pain." (R. 26.) The ALJ plainly did not "rely" on any of Dr. Jupudy's findings – normal or otherwise.

21.     What is more, Dr. Balderman provides no opinion on the amount of weight Carroll can carry. Dr. Palmer, in each of his reports, found that Carroll could carry less than the amount necessary to perform light work. Carroll too testified that she can carry only about 10 pounds occasionally and that her husband carries the grocery bags for her. (R. 66, 69.) The only conflicting evidence is found in the report – if it can be called as much – of Dr. Yu. Referring to Carroll as a "50 Y.O. Male," and using abbreviated language throughout a "report" that runs only a paragraph in length, Dr. Yu found that Carroll "may lift 20 lbs occasionally, 10 lbs frequently. And ambulate 6 hrs / 8 hr. work period with restriction in frequent stooping, bending and crouching." (R. 358) This is hardly the kind of thorough, thoughtful analysis that ought to counter the severity finding of a treating "other source," who has examined Carroll on hundreds of occasions. See Losquadro v. Astrue, No. 11-CV-1798 JFB, 2012 WL 4342069, at *16  (E.D.N.Y. Sept. 21, 2012) ("[N]umerous courts [] have clearly stated that, although an ALJ has the discretion to assign little weight to a chiropractor's opinion, the ALJ cannot do so solely because a chiropractor is not an acceptable medical source, but rather must still consider the opinion as an "other source" under the applicable rules."). As such, the truly competent evidence on record suggests that Carroll may have difficulty carrying 20 pounds at all and difficulty carrying 10 pounds frequently, as the duties of a light-work occupation mandate. Despite

this, the ALJ engages in no analysis demonstrating why he concluded that she could carry the required weight or why Dr. Palmer's opinion was accorded little weight in this regard.

22.     Accordingly, this case is remanded for a more thorough analysis of the opinion evidence on record, including those opinions of Dr. Palmer in accordance with SSR 06–03p. The ALJ shall also explicitly address the amount of weight Carroll can carry.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that this case is REMANDED to the Commissioner for proceedings consistent with this Decision.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: June 30, 2014
         Buffalo, New York

                                              /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                                    Chief Judge
                                              United States District Court